# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01142-COA

IN RE ORDER OF DIRECT CRIMINAL        APPELLANT
CONTEMPT FOR ASSISTANT DISTRICT
ATTORNEY ANDREW WILLCUTT:
ANDREW WILLCUTT

v.

STATE OF MISSISSIPPI            APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2024 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEVEN E. FARESE SR. |
| | ANTHONY L. FARESE |
| | JOSEPH WHITTEN COOPER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON ELIZABETH HORNE |
| | INDIA MARIAH SPRINKLE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 05/19/2026 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY, EMFINGER AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1. The DeSoto County Circuit Court entered an order holding DeSoto County Assistant District Attorney Andrew Willcutt in direct criminal contempt. The circuit court sentenced Willcutt to imprisonment in the DeSoto County Adult Detention Facility for ten days, with all but forty-eight hours suspended, and fined Willcutt, in his individual capacity, $100. On appeal, Willcutt argues that the circuit court erred by holding him in direct criminal contempt and by denying his request for a mitigation hearing under Mississippi Rule of Criminal

Procedure 32.2.[1]

¶2.     In both the circuit court's bench ruling and written order of contempt, the circuit court referenced prior events not in the record.  Specifically, the circuit court discussed prior instances of alleged contemptuous conduct that Willcutt committed, as well as the court's prior efforts to address that conduct.  Thus, in holding Willcutt in direct criminal contempt, the circuit court focused not only on Willcutt's failure to appear on the date ordered but also on the ongoing nature of Willcutt's past behavior.  Because both the substance of and basis for the circuit court's decision relied on this combination of alleged direct criminal conduct and prior contumacious conduct, we find that Willcutt was entitled to certain procedural due-process safeguards.  *See Buffington v. State*, 320 So. 3d 529, 530 (¶4) (Miss. Ct. App. 2021).  These safeguards include "notice of the specific charges against him and a separate hearing on those charges" before a different judge.  *Id.*  We therefore reverse the circuit court's order of direct criminal contempt and remand the matter to allow another judge to conduct a de novo hearing on the charges against Willcutt.

**FACTS**

¶3.     On September 30, 2024, DeSoto County Circuit Court Judge Celeste Wilson entered an order finding Willcutt in direct criminal contempt.  Prior to the contempt holding, Willcutt had appeared multiple times before Judge Wilson in his capacity as an assistant district

[1] Relevant to Willcutt's arguments on appeal, Rule 32.2 states that "[t]he court shall afford the alleged contemnor an opportunity, consistent with the circumstances then existing, to present exculpatory or mitigating evidence."  MRCrP 32.2(a).

attorney representing the State in the prosecution of a pending criminal matter. On several occasions, Judge Wilson had held a hearing to review the status of the indictment against the defendant. During a hearing on September 26, 2024, Judge Wilson expressed concern over the length of time that had passed since the defendant's arrest and incarceration without the DeSoto County District Attorney's Office presenting the case to the grand jury.

¶4. Despite her concerns regarding the delay in the indictment process, Judge Wilson denied the defense's motion to dismiss and instead continued the matter until four days later on September 30, 2024. The defense attorney explained that he would be traveling outside the United States on the date of the continued hearing, and he requested that another attorney be allowed to appear in his place and represent the defendant. Judge Wilson granted the defense attorney's request. Willcutt then began to state that he also would be unable to attend on the continued hearing date. Judge Wilson interrupted Willcutt and ordered him to appear before her on September 30, 2024. Willcutt explained that he had a work conference to attend in Seattle, Washington, that had already been paid for and planned well in advance of the continued hearing date. Willcutt stated that he could have another attorney from the DeSoto County District Attorney's Office who was familiar with the ongoing criminal matter appear in his place. In response, Judge Wilson again directed Willcutt to appear before her on September 30, 2024. Judge Wilson subsequently entered a written order to that effect.

¶5. At the continued hearing on September 30, 2024, DeSoto County District Attorney Matthew Barton appeared in Willcutt's place. When Judge Wilson called the docket in the

3

ongoing criminal matter, Barton answered on behalf of the State. Because she had ordered Willcutt to appear, Judge Wilson inquired about his absence. Barton informed Judge Wilson that "it was [his] decision to tell [Willcutt] to leave." Barton stated that he had given Willcutt "an assignment well in advance of [the] court date" and had wanted Willcutt to still "do that assignment." As a result, Barton informed Judge Wilson that he was appearing in Willcutt's place and was prepared to discuss the ongoing criminal matter with the court. Following Barton's statements, Judge Wilson instructed the circuit court administrator to contact Willcutt to see if Willcutt was going to appear.

¶6. After an eight-hour recess, Judge Wilson again called the docket in the ongoing criminal matter. When Judge Wilson asked if Willcutt was present, Barton responded that he had sent Willcutt on an assignment regarding the purchase of software that would streamline the District Attorney's Office's ability to distribute discovery and receive evidence. Barton stated that he had given Willcutt no choice in whether to attend the previously delegated work assignment. Barton further stated that he had tried to schedule a meeting with Judge Wilson prior to the hearing date to discuss Willcutt's absence. Barton explained that the circuit court administrator had informed him, though, that Judge Wilson would not be available until the date of the hearing. Although Barton expressed regret that the issue could not be resolved prior to the hearing, he again assured Judge Wilson that he was prepared to discuss the ongoing criminal matter.

¶7. After addressing the criminal matter, Judge Wilson returned to Willcutt's absence.

In finding that Willcutt was in direct criminal contempt of her prior order, Judge Wilson stated the following:

> As to Mr. Willcutt, when the Court orders somebody to be present, they are to be present. . . . Mr. Willcutt routinely does not follow court orders, and I've found him in contempt previously, suspended a hundred dollar fine. At another date, I told him to pay a hundred dollar fine, which he has not bothered to pay to date. At this time, the Court does find that he's willfully disregarded the Court's order, he's lessened the dignity and authority of the Court, and . . . his conduct has interfered with the Court's business. For those reasons, I will order that he appear at the adult detention facility. I'll sentence him to ten days. I will suspend all but 48 hours. He will begin serving his sentence at 8:00 a.m. on Saturday, October 5th, ending at 8:00 [a.m.] on Monday, October 7th. He will self-report. I've got an order with the address of the jail in there. Should he fail to appear, a warrant will be issued for his arrest.

> The Court additionally fines Mr. Willcutt the sum of $100 payable to the clerk of the court. It will be necessary that he pay that before the close of business October 4th.

Barton asked that Judge Wilson hold her order of contempt in abeyance to allow Willcutt an opportunity to obtain an attorney and have a hearing before a different judge. Judge Wilson denied Barton's request.

¶8. In her written contempt order entered on September 30, 2024, Judge Wilson first recounted the circumstances of the underlying criminal matter. Judge Wilson found that Willcutt had failed to make any "progress toward[] presenting [the] matter to the [g]rand [j]ury," and she found his "status report wholly unacceptable . . . ." In addition, Judge Wilson noted that Willcutt's failure "to advance prosecution in this matter was made all the more egregious in light of the serious nature of the pending allegations" and the length of

5

time the defendant had remained incarcerated.

¶9. Judge Wilson then held Willcutt in direct criminal contempt for failing to appear as ordered, and she issued accompanying sanctions. In issuing her ruling, Judge Wilson described the outcome as regrettable but concluded with the following:

> However, in light of this Court's numerous previous, and evidently ineffectual, attempts to address . . . Willcutt's contemptuous behavior toward[] the Court, behavior which includes . . . Willcutt's failure to comply with [the Court's o]rders and [his] willful misrepresentations to the Court, and such prior attempts including verbally admonishing . . . Willcutt, finding . . . Willcutt in contempt but withholding the imposition of sanctions, and, finally, finding . . . Willcutt in contempt and imposing a monetary fine which he has failed to pay, the Court finds that it has exhausted all lesser available sanctions in its effort to effectuate a change in . . . Willcutt's response to this Court's authority. In the undersigned's over fifteen (15) years serving as a judicial officer for the State of Mississippi, she has never been confronted with such an affront to the Court's authority as has been exhibited repeatedly by . . . Willcutt and expects that the sanction imposed herein will serve to deter . . . Willcutt from engaging in similar contumacious conduct in the future.

¶10. On October 1, 2024, Barton filed a motion requesting a hearing under Mississippi Rule of Criminal Procedure 32.2 to allow Willcutt to present mitigating evidence regarding his failure to appear before Judge Wilson. Alternatively, Barton requested that the circuit court set an appeal bond for Willcutt pursuant to Mississippi Rule of Criminal Procedure 32.6 and Mississippi Code Annotated section 11-51-11 (Rev. 2019).

¶11. In her order entered on October 2, 2024, Judge Wilson stated that due to Willcutt's willful and deliberate absence from her courtroom on September 30, 2024, she had been unable to afford him a contemporaneous opportunity to present mitigating evidence about the circumstances surrounding his contempt. In addition, Judge Wilson held that she already

6

possessed all the information necessary to support her finding of direct criminal contempt and the associated sanctions of a monetary fine and incarceration. Judge Wilson stated, "[T]he Court would again note, as it did during the proceedings on September 30, 2024, and in its written *Order of Direct Criminal Contempt* . . . , that such act of contempt, while itself an egregious affront to the Court's authority, was only the latest in a lengthy history of contemptuous behavior exhibited by . . . Willcutt toward[] this Court." Judge Wilson therefore concluded that the request to allow Willcutt to appear and show cause for her to reconsider the finding of direct criminal contempt was not well taken. Moreover, because Willcutt had not yet filed and perfected an appeal of her prior order, Judge Wilson found the alternative request for an appeal bond was premature. Accordingly, she denied the motion. Aggrieved, Willcutt appeals.

## DISCUSSION

¶12.    "The imposition of punishment for contempt of court is within the discretion of the trial court. Mississippi law clearly supports a court's power to sanction an attorney or party for violation of court orders, and, more specifically, for failure to appear as ordered by the court." *In re Shamsiddeen*, 358 So. 3d 324, 330 (¶18) (Miss. 2023) (citation omitted) (quoting *Wyssbrod v. Wittjen*, 798 So. 2d 352, 359 (¶23) (Miss. 2001)). In reviewing an appeal from an order of criminal contempt, the appellate courts "proceed[] ab initio to determine whether the record proves the appellant guilty of contempt beyond a reasonable doubt." *Id.* at (¶17). "The party asserting that contemptuous conduct has occurred bears the

7

burden of proof, and in a proceeding for criminal contempt, evidence of guilt must be established beyond a reasonable doubt." *Buffington*, 320 So. 3d at 534 (¶19) (internal quotation marks omitted).

¶13.    Mississippi Rule of Criminal Procedure 32.1(d) defines criminal contempt as

(1)     misconduct of a person that obstructs the administration of justice and that is committed either in the presence of the judge presiding in court or so near thereto as to interrupt its proceedings;

(2)     willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the primary purpose of the finding of contempt is to punish the contemnor; or

(3)     any other willfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court.

MRCrP 32.1(d).

¶14.    The two types of criminal contempt are direct and indirect (which is also commonly referred to as constructive). *Shamsiddeen*, 358 So. 3d at 330 (¶19). As we have previously explained,

[d]irect criminal contempt involves words spoken or actions committed in the presence of the court while constructive contempt involves actions which are committed outside the presence of the court. Because direct criminal contempt takes place in the very presence of the judge making all the elements of the offense personal knowledge, the punishment for direct contempt may be meted out instantly by the judge in whose presence the offensive conduct was committed.

*Buffington*, 320 So. 3d at 534-35 (¶20) (citations and internal quotation marks omitted).

"Thus, a party guilty of direct criminal contempt for conduct occurring in the presence of the

8

court is not entitled to notice or a specific show-cause hearing." *Macvaugh v. State*, 385 So. 3d 443, 452 (¶19) (Miss. Ct. App. 2023).

¶15. In contrast to direct criminal contempt, indirect or constructive criminal contempt requires that

> defendants . . . be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing. We also have found that in cases of indirect or constructive criminal contempt, where the trial judge has substantial personal involvement in the prosecution, the accused contemptor must be tried by another judge.

*Buffington*, 320 So. 3d at 535 (¶20) (quoting *Harris v. State*, 224 So. 3d 76, 81 (¶21) (Miss. 2017)). Accordingly, when an appellant's "conduct actually constituted constructive criminal contempt, his due process rights would guarantee him more than the immediate sentence he received, including a different judge to hear the contempt proceedings." *Id.* (internal quotation mark omitted).

¶16. Here, the circuit court's order of contempt specifically stated that Willcutt's past alleged contumacious conduct, in combination with his failure to appear at the hearing on September 30, 2024, resulted in the finding of direct criminal contempt. As Willcutt asserts on appeal, however, the record contains no filings or transcripts related to these prior instances of alleged contemptuous conduct that the circuit judge recounted and relied on in both her bench ruling and written order of contempt. Willcutt argues that the record "is wholly insufficient to convict [him] of direct criminal contempt beyond a reasonable doubt" based on these allegations.

¶17. To Willcutt's point, the circuit court's written order of contempt stated that Willcutt had made "willful misrepresentations" to the court. On appeal, Willcutt challenges the circuit court's characterization of his conduct. During oral argument before this Court, the State admitted in response to questioning that it could not recall seeing any willful misrepresentations by Willcutt contained within the trial record. The State opined that perhaps the misrepresentations to which the circuit court referred had occurred during a prior interaction not contained in the record. But as Willcutt contends, this lack of record evidence regarding the alleged instances of prior conduct the circuit court relied on in reaching its ruling "is precisely why [he] is entitled to a hearing . . . ."

¶18. Willcutt also contends that his absence at the hearing on September 30, 2024, neither amounted to willful and deliberate disobedience nor obstructed the administration of the circuit court's docket. According to Willcutt, the specific circumstances of his situation placed him "in the unenviable position" of not appearing as ordered by the circuit court or defying his employer's clear directive to attend a previously scheduled work assignment. In addition, Willcutt asserts that because Barton appeared in his place and was prepared to discuss the ongoing criminal matter, there was no interruption to the circuit court's administration of its docket or insult to the circuit court's dignity and authority. Based on these considerations, Willcutt argues that he should have been afforded an opportunity "to combat the narrative that he has a history of contumacious behavior" and to explain both "his absence and provide an on[-]the[-]record response to the allegations contained in the [circuit

court's] orders."

¶19. Upon review of the record, we agree with Willcutt that the circuit court's reliance on both his past alleged contemptuous conduct as well as his failure to appear in court on September 30, 2024, entitled him to the procedural due-process safeguards of "notice of the specific charges against him and a separate hearing on those charges" before a different judge. *Buffington*, 320 So. 3d at 530 (¶4). In *Buffington*, a chancellor held an attorney in direct criminal contempt for conduct that occurred during a pretrial conference. *Id.* at (¶1). As exhibits to the order of contempt, the chancellor attached not only the transcript and audio recording of the pretrial conference but also "transcripts and audio recordings from prior proceedings and copies of previously filed court documents that [the chancellor] referenced during the contempt proceedings." *Id.*

¶20. While the chancellor in *Buffington* explicitly stated that he was only holding the attorney in direct criminal contempt for the conduct that occurred during the pretrial conference, this Court found that the record reflected "the basis and substance of the court's ruling was much less clearly delineated and relied on alleged contemptuous conduct that presented a combination of both direct and constructive criminal contempt" encompassing prior interactions and filings. *Id.* at 536 (¶24) (internal quotation mark omitted). As a result, we reversed the chancellor's judgment and remanded the case to allow another judge to conduct a de novo hearing to determine if the attorney's conduct and filings amounted to direct criminal contempt. *Id.* at (¶26).

11

¶21. As previously acknowledged, much like the contempt decision addressed in *Buffington*, we find that the circuit court here relied on a combination of past and present alleged contumacious conduct to hold Willcutt in direct criminal contempt. We therefore conclude that Willcutt must be given notice of the charges against him and a de novo hearing before another judge to determine if his conduct indeed constituted criminal contempt. Accordingly, we reverse the circuit court's order and remand the matter to enable Willcutt to have the procedural due-process safeguards to which he is entitled.

## CONCLUSION

¶22. Based on the foregoing, we reverse the circuit court's order of direct criminal contempt and remand the matter to allow Willcutt to have a separate hearing before a different judge.

¶23. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**